IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EBONY NICOLE MOORE,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | No. 13-5079 |
| **TEMPLE UNIVERSITY, ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                                                                       **July 29, 2016**

## MEMORANDUM OPINION

Plaintiff Ebony Nicole Moore is a former track and field student-athlete at Temple University ("Temple"). In 2011, she was dismissed from the Temple Track & Field Team and her athletic aid was revoked. Proceeding pro se, Plaintiff alleges that she was discriminated against on the basis of her gender while she was on the track team, and that her dismissal from the team and the revocation of her athletic aid was a result of unlawful gender discrimination and retaliation. She brings claims against Temple under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et. seq. ("Title IX"), and against team Head Coach Eric Mobley and Temple Athletics Coordinator Kristen Foley under 42 U.S.C. § 1983 ("Section 1983"). Before me are the parties' cross-motions for summary judgment. For the reasons that follow, I will deny Plaintiff's motion and grant Defendants' motion.

### I. FACTUAL AND PROCEDURAL HISTORY

The following facts are undisputed unless otherwise indicated:

Plaintiff enrolled as an undergraduate student at Temple and joined the track team in the Fall of 2009. She participated in throwing events such as the discus, shot put and weight, and received a partial athletic scholarship for the 2009-10 academic year, which was renewed for the

2010-11 year. During the relevant time period, Defendant Eric Mobley was the Head Coach of the Track Team, and Defendant Kristen Foley was Temple's Athletics Coordinator. During the 2009-10 year, Ashley Harbin, a Graduate Assistant, was the throwing events coach. During the 2010-11 year, Aaron Ross, a Volunteer Assistant, was the throwing events coach. Each academic year included both a fall indoor track season and a spring outdoor track season. (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶¶ 1-3, 8-9; Pl.'s Resp. to Defs.' SUMF at ¶¶ 1-3, 8-9.)

Aside from these basic facts, the parties' characterization of Plaintiff's time on the team diverges considerably. Plaintiff alleges that she was harassed and verbally abused by her teammates on a regular basis, and, after reporting the abuse to Defendant Coach Mobley on several occasions, "began to be viewed as a whistleblower and was further rebuffed as well as harassed by Mr. Mobley." (Pl.'s MSJ at 1-2). Plaintiff states that she was sexually harassed by events coach Harbin, who propositioned her on one occasion and touched her on two occasions, and "was subjected to gender based discrimination by [] events coach [] Ross," and that when she "reported [Ross's] behavior to Defendant Mobley nothing was done." (Pl.'s deposition at 125-35; Pl.'s MSJ at 2.)

Defendants however contend that Plaintiff "frequently missed weight lifting sessions, had a bad attitude at practice and overall, and ignored coaching instructions." (Defs.' SUMF ¶ 11.) Defendants further state that while "the throwing group frequently argued with each other, [] there were no complaints about sexual harassment or gender based discrimination." (Id. ¶ 6.)

The events of April 20, 2011 precipitated the chain of events leading to this litigation. On that day, Defendant Mobley states that he noticed that Plaintiff's name, along with others, was not on the itinerary for an upcoming meet. (Id. ¶ 13.) Defendants characterize this as an

2

"oversight" and explain that "the male and female throwers were not entered, and thus unable to participate, in the meet." (Id. ¶¶ 13-14.) Defendants state that Plaintiff then approached Coach Mobley on the track during practice, "screamed" at him, and then "walked out of practice." (Id. ¶¶ 15-16.) Plaintiff however contends that "her name was removed from a competition itinerary," and that when she "went to Defendant Mobley in order to ask him why this had occurred [she] was berated in front of her team and dismissed from the track." (Pl.'s MSJ at 2.) Plaintiff then describes how she then "returned to her dormitory room, removed the screen from the 5th floor apartment window and had to be restrained and placated by EMS workers to prevent her from injuring herself." (Id.)

On April 25, 2011, Plaintiff's great uncle, Othello Mahone, sent an e-mail to the Temple President and Athletic Director (Defendant Foley) requesting a meeting "to discuss the situation surrounding [Plaintiff]." Included in the e-mail was a statement written by Plaintiff describing her two years as a member of the Temple track team. Plaintiff recounts being "subjected to an extensive amount of alienation, neglect, verbal abuse, gender based discrimination, sexual misconduct and a myriad of other unethical practices." She states that she was called "insulting epithets" such as "fat bitch" and "ghetto bitch" by her teammates "on a daily basis." With respect to events coach Harbin, she states that she "attempted to have a romantic relationship with me." With respect to Defendant Coach Mobley, she wrote that he cursed extensively, and "was obviously partial to the Men's team" since he spared the men from his curse laden "tongue lashings" and on at least one occasion "dismissed the women's track team and forbade [the women] to practice but allowed the men to workout." With respect to events coach Ross, Plaintiff wrote, under a section of her letter labeled "sexual misconduct," that while she "was

3

attempting to practice" Ross was speaking inappropriately about his sex life in detail with another thrower. (Attached to Defs' MSJ as Exh. 8.)

On April 27, 2011, two days after receiving Mr. Mahone's email and Plaintiff's statement, Defendant Athletics Coordinator Foley interviewed Defendant Coach Mobley and events coach Ross about Plaintiff's allegations. Defendant Foley also interviewed events coach Harbin, who provided a statement denying Plaintiff's allegations. On May 4, 2011, Plaintiff and her uncle Mr. Mahone met in person with Defendants Foley and Mobley. (Defs.' SUMF ¶¶ 22-25.)[1]

Shortly after the meeting, Plaintiff sent an e-mail to Defendant Mobley stating that she "ha[s] finals Thursday and Friday needless to say [she] won't be going to A-10s [the Atlantic 10 Conference Championships, scheduled for May 7-8, 2011]." (Attached to Defs.' MSJ as Exh. 12.) On May 6, 2011, Mr. Mahone sent an e-mail to Defendant Foley as a follow-up to the meeting. Mr. Mahone described the meeting as being both "contentious" and "very fruitful," and focused his e-mail on the ways that the coaching staff and Plaintiff could work together to improve her athletic performance. (Attached to Defs.' MSJ as Exh. 13.) Plaintiff chose not to go to the Atlantic 10 Championships. In his affidavit, submitted in support of Defendants' motion for summary judgment, Defendant Mobley states that "[l]ater in May of 2011 . . . [b]ased on Plaintiff's prior conduct, and culminating with her decision to not compete at the Atlantic 10 Championships, [he] recommended that her grant-in-aid not be renewed for the 2011-2012 academic year . . . [and] removed her from the team." (Attached to Defs.' MSJ as Exh. 2.)

In a letter dated May 20, 2011 from the Director of Student Financial Services at Temple, Plaintiff was advised that "upon recommendation of the Department of Intercollegiate Athletics

---

[1] While Plaintiff does not deny that these interviews and meetings took place, she generally deems the investigation into her grievances to be inadequate. (Pl.'s Resp. to Defs.' SUMF at ¶¶ 22-25.)

[her] athletics aid will not be renewed for the 2011-12 academic year." The letter further provided that "[i]f you feel the cancellation of your aid is unfair or unjustified, you have the right, as provided by NCAA regulations, to request a hearing." (Attached to Defs' MSJ as Exh. 14.) Plaintiff requested a hearing, which was heard by the Athletic Appeals Panel ("Appeals Panel") on July 28, 2011.

On August 2, 2011, the Appeals Panel formally notified Plaintiff of its decision by letter, which stated that, "[a]s stated at the hearing on July 28th, 2011 the panel denied your appeal for your continued grant aid from the athletics department." The letter however further stated that "the University will provide you with non-athletic financial aid for the 2011-12 academic year in an amount equal to your athletic scholarship that you received in the 2010-11 academic year." (Attached to Defs.' MSJ as Exh. 19.)  Plaintiff then completed her undergraduate degree and graduated from Temple University in 2012.

Plaintiff filed her complaint on July 29, 2013 in the Philadelphia County Court of Common Pleas. On August 29, 2013, Defendants removed the case to this Court. On September 5, 2013, Defendants filed a motion to dismiss, and in an April 29, 2014 Order, I granted Defendants' motion to dismiss in part, leaving only the Title IX claim against Temple and the Section 1983 claims against Defendants Mobley and Foley. This case has proceeded through discovery, and Plaintiff and Defendants have filed cross-motions for summary judgment.

## II.     STANDARD OF REVIEW

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact in dispute, and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-

moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  A factual dispute is "material" if it might affect the outcome of the suit under the appropriate governing law.  Id. at 423. The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record.  Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 256.

### III.   DISCUSSION

As noted above, Plaintiff alleges that she was subjected to gender discrimination by her teammates and the coaching staff, and that Defendants retaliated against her for reporting this discrimination by dismissing her from the team and failing to renew her athletic scholarship. Plaintiff brings claims of gender discrimination and retaliation against Temple under Title IX, and brings claims against Defendants Coach Mobley and Athletics Coordinator Foley under Section 1983.  Plaintiff argues that she is entitled to summary judgment on all of these claims. Defendants oppose Plaintiff's motion and have filed a cross-motion for summary judgment, primarily asserting that Plaintiff's claims are time-barred.  I will first address the question of whether Plaintiff's claims are timely.

In both a Title IX and a Section 1983 action, a federal court applies the relevant state statute of limitations for a personal injury tort action.  See Wilson v. Garcia, 471 U.S. 261, 276 (1985); see also Urrutia v. Harrisburg Cnty. Police Dep't., 91 F.3d 451, 457 n.9 (1996).  Federal courts sitting in Pennsylvania have determined that, pursuant to 42 Pa. C.S.A. § 5524, a two-year

statute of limitations applies.  See Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).  For purposes of the statute of limitations, a cause of action accrues "when the plaintiff knew or should have known of the injury upon which its action is based."  Id.  In other words, accrual occurs "when the plaintiff has 'a complete and present cause of action'"—that is, when "the plaintiff can file suit and obtain relief."  Shih-Liang Chen v. Township of Fairfield, 354 Fed. Appx. 656, 659 (3d Cir. 2009) (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 201 (1997)).

      Because Plaintiff filed her lawsuit on July 29, 2013, any claims which accrued before July 29, 2011 are barred by the statute of limitations.  Defendants argue that Plaintiff's claims are time-barred as having accrued in May 2011, when she was both dismissed from the team and advised by the Director of Student Financial Services at Temple that her athletic aid would not be renewed for the 2011-12 academic year.  (Defs.' MSJ at 12-17.)  Plaintiff responds that her claims did not accrue until at least August 2, 2011, when the Appeals Panel issued the formal letter upholding the non-renewal of athletic aid.  (Pl.'s Resp. to Defs.' MSJ at ECF p. 4.)

      The United States Supreme Court has addressed the issue of when the statute of limitations accrues in the context of a university grievance process in Delaware State College v. Ricks, 449 U.S. 250 (1980).  Ricks involved a college professor who brought suit under Title VII alleging that he was denied tenure because of his national origin.  Id.  The professor was first informed of the denial of tenure by a letter from the College Board of Trustees stating that it had "officially endorsed the recommendations of the Faculty Senate . . . [to] not grant you tenure."  Id. at 254, n.2.  At the same time, and as is apparently the custom with faculty who are denied tenure, the professor was "offered [and signed] a 'terminal' contract to teach one additional year."  Id. at 253.  The professor challenged the denial of tenure by filing a grievance with the

7

Board of Trustees grievance committee. Id. at 252. The grievance committee promptly held a hearing, and a few months later it notified the professor that it had denied his grievance and upheld the decision to deny tenure. Id. at 254.

The Supreme Court considered on which of three dates the limitations period commenced: the date the professor was notified of the denial of tenure; the date the professor was notified that his grievance had been denied; or the final date of the professor's "terminal" contract. Id. at 259-62. The Court's analysis was guided by its observation that because the denial of tenure was the precise unlawful employment practice of which the professor complained, "the limitations periods commenced to run when the tenure decision was made and [the professor] was notified." Id. at 257-59. In this regard, the Court found that the professor was properly notified by the Board of Trustees letter which characterized the denial of tenure as the Board's "official position." Id. at 261. The Court rejected the date of the grievance committee decision on the basis that "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made," and the date of expiration of the terminal contract on the basis that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id. at 257, 261 (emphasis in original).

The reasoning of Ricks has been applied in several other cases, including Datto v. Harrison, 664 F.Supp.2d 472 (E.D. Pa. 2009) (McLaughlin, J.), where a medical student who brought claims under the American with Disabilities Act alleged that his dismissal from the M.D./Ph.D. program of Thomas Jefferson University was the result of disability discrimination and retaliation. After being notified by letter that he was dismissed from school, the plaintiff filed an appeal to a higher board within the university, which ultimately affirmed his dismissal.

8

Id.  In finding that the plaintiff's claim accrued when the student was first notified of his dismissal by letter – not when the internal appeal process had run its course – the court explained:

> The letter told the plaintiff that the Jefferson Committee on Student Promotion "has decided that your status at Jefferson Medical College has been officially dismissed." This language is not equivocal. It describes a completed decision to dismiss the plaintiff and describes his current status as "officially dismissed." With the letter, Jefferson "made and communicated" the decision and started the statute of limitations running on all the plaintiff's claims concerning it. *See Ricks,* 449 U.S. at 259 [].
>
> The plaintiff's appeal of this decision and the possibility that it could have been reversed do not change when the cause of action accrued or otherwise toll the statute of limitations. Like the grievance in *Ricks,* this was an opportunity for the plaintiff to have the defendants reconsider a decision that had already been made. As such, the plaintiff's cause of action arose when the initial decision was communicated to him, not upon the conclusion of his appeal.

Id. at 485.

I find the holdings of Ricks and Datto to be applicable here.  Like the communications in those cases, the May 20, 2011 letter from the Director of Student Financial Services at Temple – which states that "[t]his letter to advise you that upon the recommendation of the Department of Intercollegiate Athletics your athletics aid <u>will not be renewed</u> for the 2011-12 academic year" – unequivocally notifies Plaintiff of the non-renewal of her athletic aid.  (Attached to Defs.' MSJ as Exh. 14).  Moreover, the letter's invitation for Plaintiff "to request a hearing" in the event that she felt that the non-renewal of athletic aid was "unfair or unjustified" makes it clear that the appeals process was an opportunity to remedy a decision which had already been made.  (Id.)  Accordingly, the limitations period as it relates to the non-renewal of athletic aid commenced on

9

May 20, 2011. Plaintiff's Title IX and Section 1983 claims challenging the non-renewal of her athletic aid must therefore be dismissed as time-barred.

In addition to her allegations surrounding the non-renewal of athletic aid, Plaintiff also contends that she was subjected to gender-based discrimination while on the track team, and that she was dismissed from the team for discriminatory and retaliatory reasons. Because the written May 20, 2011 non-renewal decision did not address the question of Plaintiff's membership on the team, the question of when the limitations period began to run as it relates to Plaintiff's treatment and ultimate dismissal from the team is an issue which I must address separately. Like the non-renewal of athletic aid, the essential inquiry is when Plaintiff was notified of her dismissal from the team. Ricks, 449 U.S. 250.

Defendants contend that it is uncontested that Plaintiff was aware of her dismissal from the team in May 2011, and reference various pieces of evidence to support this proposition, including:

- Coach Mobley's statement in his affidavit that he made the decision to remove Plaintiff from the team in May 2011, at the same time that he recommended that her athletic aid not be renewed for 2011. [Attached to Defs.' MSJ as Exh. 2.]

- A statement from Plaintiff's March 28, 2014 motion for leave to amend her complaint, wherein she wrote that she "received notice on May 20th 2011, that she was being removed from the Temple University track and field team, as well as notice of her scholarship being revoked." (Doc. no. 16 at 7.)

(Defs.' Reply at 4-6.)

Plaintiff responds that because it "was not definitively established that Ms. Moore was no longer a member of the Team until the conclusion of the Athletic Appeals Aid Hearing," the statute of limitations should start to run on August 2, 2011. (Pl.'s Resp. to Defs.' MSJ at ECF p. 4) (emphasis omitted.)

10

Defendants have cited to two definitive pieces of evidence that could establish that Plaintiff was well aware that her removal from the track team occurred in May of 2011. Therefore the burden shifts to Plaintiff, as the non-moving party, to "set forth facts showing there is an issue of material fact" regarding the May date.  Anderson, 477 U.S. at 250.  Simply stating that it was "not definitively established" that Plaintiff was not notified of her removal from the track team until the conclusion of the aid hearing is not enough to defeat summary judgment.

It is true that the May 20, 2011 non-renewal of athletic aid decision, the July 28, 2011 appeals hearing, and the August 2, 2011 Appeals Panel aid notification did not address Plaintiff's membership on the track team.  Indeed, the letter announcing the non-renewal of athletic aid and the written decision of the Appeals Panel upholding the non-renewal decision make no mention of Plaintiff's standing on the team.  These events are independent of Plaintiff's removal from the team, and are not enough to overcome the two pieces of evidence relied upon by Defendants, which clearly establish removal and thus knowledge of this injury, in May of 2011.

Nor do these events refute or create a material dispute about Plaintiff's clear statements in court filings acknowledging that she was notified of her removal from the team on May 20, 2011.  See In re Cendant Corp. Securities Litigation, 109 F.Supp.2d 225, 230 (D.N.J. 2000) ("'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'") (quoting Schott Motorcycle Supply, Inc. v. American Honda Motor Co., 976 F.2d 58, 60 (1st Cir. 1992)); see also Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972) (explaining that "admissions [] of fact which otherwise would require evidentiary proof" are "binding for the purpose of the case in which the admissions are made.").

As noted previously, the limitations period begins "when the initial decision [i]s communicated [], not upon the conclusion of [the] appeal."  Datto, 664 F.Supp.2d at 485.

Accordingly, Plaintiff's claims of gender discrimination and retaliation as they relate to her membership and dismissal from the team are also dismissed as being time-barred.[2]

Finally, Plaintiff has brought a claim under Title IX for retaliation against Temple asserting that the July 28, 2011 Appeals Panel hearing and the subsequent August 2, 2011 decision upholding the non-renewal of athletic aid constituted a separate incident of retaliation.

---

[2] Plaintiff puts forth several alternative arguments as to why the statute of limitations should be tolled or commence at a later date. She first argues that the Court should apply the "continuing violations" theory. Under the theory, "discriminatory acts that are not individually actionable may be aggregated for purposes of a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" Gjeka v. Del. County Cmty. College, 2013 WL 2257727, *4 (E.D. Pa. May 23, 2013) (quoting Nat. RR. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002)).

The continuing violations theory is not applicable here. With respect to the Title IX claims against Temple, the theory has not been extended to such claims. See id. at *4-5 (observing that there is "[no] case that applies the continuing violations theory to a Title IX claim," and that courts have observed that "the theory may well be a poor fit with the goals of Title IX.") (citations and quotations omitted). As for the Section 1983 claims against Defendants Foley and Mobley, there are no allegations that either of the Defendants took any action against Plaintiff after the non-renewal of her athletic aid and her dismissal from the track team.

With respect to her claims related to her dismissal from the track team, Plaintiff argues that the statute of limitations should begin to run on September 6, 2011 which, being "the first day of [p]ractice for the 2011-12 track and field season," was the "actual date of [Plaintiff's] non participation as a member of the [track team]." (Pl.'s Resp. to Defs.' MSJ at ECF p. 5.) As explained above, the essential inquiry in this regard is when Plaintiff was notified that she was dismissed from the track team. Ricks, 449 U.S. 250. The date of the beginning of the first track season in which she did not participate is thus irrelevant.

Finally, Plaintiff argues that the statute of limitations should be equitably tolled on account of the "discovery rule." (Pl.'s Resp. to Defs.' MSJ at ECF p. 21.) "Under the discovery rule the statute is tolled where the injury is inherently unknowable and the claimant is baselessly ignorant of the wrongful act and the injury complained of." William A. Graham Co. v. Haughey, 646 F.3d 138, 150 (3d Cir. 2011) (quoting Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 860 A.2d 312, 319 (Del. 2004)) (internal quotations omitted)). Plaintiff contends that the discovery rule is applicable because the she did not become aware of her injuries until well after the grievance process had run its course. For instance, she contends that, as a result of Defendants' actions, she was diagnosed with post-traumatic stress disorder, but not until November 27, 2012. (Pl.'s Resp. to Defs.' MSJ at ECF p. 21.) Even if this were the case, Plaintiffs primary complaints in this lawsuit are that her dismissal from the track team and the non-renewal of her athletic aid was unlawful. These injuries are not "inherently unknowable," and the discovery rule does not apply.

12

Both Plaintiff and Temple move for summary judgment on this claim, which the parties agree is timely.[3]

In order to establish a *prima facie* case of retaliation, a plaintiff must put forth evidence that: (1) she engaged in protected activity; (2) an adverse action was taken against her; and (3) there was a causal connection between the protected activity and the adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). In order to prove the causal connection element, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997)). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." Id. (citing Farrell v. Planters Lifesavers Co., 206 F. 3d 271, 281 (3d Cir. 2000)).

Plaintiff's argument that there was a causal connection between the protected activity (Plaintiff's April 25, 2011 e-mail grievance) and retaliatory action (the August 2, 2011 Appeals Panel decision affirming the non-renewal of athletic aid) is based on the presence of Temple Associate University Counsel, Valerie Harrison, Esq., at the appeals hearing. In an affidavit, Ms. Harrison confirms that she attended the hearing as an adviser to the Athletic Appeals Panel as she "customarily had done with other student-athlete appeals," but that "she did not influence in, or participate in, the Panel's decision." (Attached to Defs.' MSJ as Exh. 18.) Plaintiff however

---

[3] Having characterized the August 2, 2011 Appeals Panel decision as a separate incident of retaliation, and being that this lawsuit was filed on July 29, 2013, this claim falls within the two-year limitations period.

contends that because the "grievances were in Ms. Harrison's possession months before she led the appeals panel hearing it can be concluded that the grievances were indeed a relevant component regarding the hearing and that the existence of the grievances influenced the outcome of the hearing." (Pl.'s Resp. to Defs.' MSJ at ECF p. 16.)

Plaintiff's argument is based solely on the temporal proximity of approximately three months between the submission of the grievance and the decision affirming the non-renewal of athletic aid. "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (emphasis added). I will therefore grant Defendants' motion for summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED**, and Defendants Temple University, Eric Mobley, and Kristen Foley's motion for summary judgment is **GRANTED**. An appropriate Order follows.